**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| OSMAN BAHAR, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | No. 06-CV-3910 |
| | : | |
| NORTHWESTERN HUMAN SERVICES, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

Presently pending is Defendant's Motion to Dismiss, and the response thereto.  For the following reasons, Defendant's Motion will be granted in part, and denied part.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, Osman Bahar, was employed by Defendant, Northwestern Human Services (hereinafter "NHS"), as a mental health technician (hereinafter "MHT") in one of its Philadelphia treatment centers in 1999.  Complaint at ¶ 11.  Plaintiff alleges that he is an African-born naturalized citizen of the United States.  Complaint at ¶ 3.  He has a discernable accent and is a practicing Muslim.  Complaint at ¶¶ 8, 9.

In his Complaint, Plaintiff alleges that on October 15, 2005, he was scheduled to work at one of Defendant's facilities from 4:30 p.m. until 11:00 p.m.  Complaint at ¶ 15.  Plaintiff arrived at 4:30 p.m. and was informed that the only other MHT would be offsite from 6:30 p.m. to 9:30 p.m. accompanying a client to an activity.  Complaint at ¶ 16.  Plaintiff was completing a day long fast as required by his religion during Ramadan, and was scheduled to break his fast after 5:15 p.m.  He became concerned about being able to obtain food once his co-worker went offsite, since NHS rules prohibited Plaintiff from leaving the site unattended.  Complaint at ¶ 19.  Consequently, after discussing the matter with his co-worker, but without obtaining permission from his supervisor, Plaintiff left the facility at 5:15 p.m.  Complaint at ¶¶ 22, 25.  Plaintiff's supervisor learned that Plaintiff had left the facility, ordered the doors locked, and reprimanded

Plaintiff upon his return.  Complaint at ¶¶ 27, 30.  After attempting to explain that he left in order to accommodate his religious obligations, Plaintiff's supervisor allegedly told Plaintiff that she "did not care about his religion" and that "religion had no place at NHS as only NHS rules apply ..."  Complaint at ¶¶ 32, 33.  Plaintiff was placed on unpaid suspension, which he remained on until November 11, 2005, when he was terminated.  Complaint ¶¶ 35, 42.  Prior to his suspension, Plaintiff claims that he submitted a report claiming national origin and religious discrimination to NHS's compliance hotline.  Complaint at ¶ 36.

Plaintiff also claimed that he was disciplined by being forced to apologize in 2004 for hugging a female co-worker, who complained to NHS, allegedly stating that "although it was appropriate for Americans to hug upon parting, the gesture was inappropriate for African-born Muslims."  Complaint at ¶¶ 58, 61.  Plaintiff did not file any formal complaint regarding this alleged discipline.  Complaint at ¶ 66.

After being terminated, Plaintiff sought counsel and filed a charge with the Equal Employment Opportunity Commission (hereinafter "EEOC") and the Pennsylvania Human Relations Commission (hereinafter "PHRC").  Complaint at ¶ 47.  In the instant Complaint, Plaintiff sought relief for 5 counts of discrimination.  In Count One, Plaintiff claims that Defendant discriminated against him on the basis of his national origin[1] in violation of the Title VII of the Civil Rights Act of 1964 and 1991, as amended, 42 U.S.C. §§ 2000e *et seq.* (hereinafter "Title VII").  In Count Two, Plaintiff claims that Defendant retaliated against him for filing his grievance with NHS's compliance hotline in violation of Title VII.  In Count Three, Plaintiff claims that Defendant discriminated against Plaintiff because of his national origin in violation of the Civil Rights Act of 1870, as amended, 29 U.S.C. § 1981.  In Count Four, Plaintiff

---

[1] Plaintiff's complaint fails to allege what nation Plaintiff is from, and instead repeatedly refers to him as "African-born." Africa is, of course, a continent and not a nation. In his EEOC complaint, however, Plaintiff does assert that he was born in the Republic of Sudan.

claims that Defendant discriminated against him on the basis of his national origin in violation of the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* (hereinafter "PHRA").  Finally, in Count Five, Plaintiff claims that he was retaliated against for filing his grievance in violation of the PHRA.

Defendant moved to dismiss the complaint on four grounds.  First, Defendant argued that Plaintiff's claims regarding being disciplined for inappropriately touching a female employee are barred by the statute of limitations for Title VII and PHRA claims.  Second, Defendant argued that Plaintiff's retaliation claims should be dismissed because he failed to raise them in his EEOC and PHRC charges, and thus failed to exhaust his administrative remedies.  Third, Defendant argued that Count Three of Plaintiff's complaint should be dismissed because Section 1981 does not cover claims of discrimination based solely on national origin or religion.  Finally, Defendant moves to dismiss Plaintiff's claims that he brings this action on behalf of himself and "all others similarly situated," because Plaintiff fails to meet the pleading requirements set forth in Federal Rule of Civil Procedure 23 or Local Rule of Civil Procedure 23.1 regarding class actions.

## II.    DISCUSSION

Under Federal Rule of Civil Procedure 12(b)(6) a court may dismiss a complaint for failure to state a cause of action only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).  The court "must take all the well pleaded allegations as true and construe the complaint in the light most favorable to the plaintiff."  Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988).  In Swierkiewicz, the United States Supreme Court addressed the liberal pleading standards set forth in Fed.R.Civ.P. 8(a)(2), noting that Fed.R.Civ.P. 8(a)(2) only requires "a short and plain

statement of the claim showing that the pleader is entitled to relief."   Swierkiewicz, 534 U.S. at 508. The Supreme Court further noted that the statement of facts must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. at 512. (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

A.      Plaintiff's 2004 allegation of discrimination

Title VII and the PHRA require a prospective plaintiff to satisfy certain administrative prerequisites prior to filing a claim under either statute.  Title VII requires a plaintiff to file a timely claim of discrimination with the EEOC within 300 days of the adverse employment action. West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3rd Cir. 1995)  Failure to timely file such a claim precludes plaintiffs from bringing suit under Title VII.  Id.  Pennsylvania law has a similar, though shorter filing deadline, requiring plaintiffs to file an administrative complaint with the PHRC within 180 days of an alleged act of discrimination.  Pa. Stat. Ann. §§ 959(a), 962. Defendant's argue that the statutory period for Plaintiff's claim regarding being disciplined for allegedly improperly touching another employee began in 2004, and that since Plaintiff did not file his complaint with the EEOC or PHRC until November 2005, he is time barred under both the 300 and 180 time limits.

Plaintiff concedes that the allegation of improper discipline in 2004 is not independently actionable, but argues that it is nonetheless admissible as a "continuing violation" as part of a hostile work environment claim.  Pl.'s Resp. at 16.  Defendant argues in response that Plaintiff failed to allege sufficient facts to support a hostile work environment claim, and that he failed to exhaust his administrative remedies with regard to a such a claim.

There are 5 elements necessary to establish a hostile work environment claim: (1) the plaintiff suffered intentional discrimination because of his or her membership in the protected class; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally

4

affected the plaintiff; (4) the discrimination would have detrimentally affected a reasonable person of the same protected class in that position; and, (5) the existence of respondeat superior liability.  Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990).

Plaintiff failed to specifically allege a hostile work environment claim.  Plaintiff has, however, pled facts which could be construed as such a claim.  Specifically, Plaintiff alleged that Defendant, through their employees, discriminated against him on the basis of his national origin as part of a "pattern and practice of discriminating against African-born/Muslim employees."  Complaint at ¶ 67.  Liberally construing the Complaint, as required at this stage, the Court will treat the facts alleged in the Complaint as an allegation of a hostile work environment.

As discussed above, Title VII requires a plaintiff to file a timely claim of discrimination with the EEOC within 300 days of the adverse employment action, and Pennsylvania law sets a 180 day period for filings with the PHRC.  West, 45 F.3d at 754; Pa. Stat. Ann. §§ 959(a), 962. An exception to the timely filing requirement is the continuing violation theory doctrine. Under this theory, a plaintiff may "pursue a Title VII claim for discriminatory conduct that began prior to the filing period if he can demonstrate that the act is part of an ongoing practice or pattern of discrimination of the defendant."  West, 45 F.3d at 754 (internal citations omitted).  In order to fall within the continuing violations theory, a plaintiff must prove: 1) that at least one act occurred within the filing period, and 2) that the harassment is "more than the occurrence of isolated or sporadic acts of intentional discrimination."  Id. at 755 (internal citations omitted). "The relevant distinction is between the occurrence of isolated, intermittent acts of discrimination and a persistent, on-going pattern."  Id.

Plaintiff has alleged that at least one act of discrimination did occur within the statutory period, namely the termination in 2005.  In order to determine whether a plaintiff has established the second prong, the Third Circuit has looked to the approach of the Fifth Circuit in

<u>Berry v. Board of Supervisors of Louisiana State Univ.</u>, 715 F.2d 971, 981 (5th Cir. 1983) and

<u>Waltman v. International Paper Co.</u>, 875 F.2d 468, 474-75 (5th Cir. 1989).  The Fifth Circuit's

approach considers 3 factors:

> (i) subject matter--whether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanence--whether the nature of the violations should trigger the employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.

<u>West</u>, 45 F.3d at N.9 (quoting <u>Martin v. Nannie and Newborns, Inc.</u>, 3 F.3d 1410 (10th Cir.

1993)).

 Plaintiff has alleged a pattern and practice of discrimination on the basis of national

origin.  That allegation, taken as true, is sufficient to satisfy the subject matter prong.  Although

Plaintiff's Complaint only includes 2 specific allegations of discrimination, at this stage he is not

required to plead with particularity all facts which support his claim.  <u>Swierkiewicz</u>, 534 U.S. at

512-13).  The alleged discrimination which falls outside of the statutory period, namely being

forced to apologize for hugging another employee, is not the kind of violation that should trigger

the employee's awareness of the need to assert his rights.  Considering the factors listed

above, the court concludes that, at this stage of the proceedings, Plaintiff has pled sufficient

facts to invoke the continuing violations theory.

 Defendant argues that Plaintiff has "failed to plead .... a legally viable racially hostile

environment claim" because the Complaint does not allege workplace harassment that is

"sufficiently severe or pervasive that it unreasonably interferes with the employee's work

performance."  Def.'s Reply Brief at 5-6.  It is inappropriate for the court to make such a

determination at this stage.  The First Circuit considered a similar argument in <u>Gorski v. N.H.</u>

<u>Dep't of Corr.</u>, 290 F.3d 466 (1st Cir. 2002).  In <u>Gorski</u>, the court overturned a decision by the

district court dismissing a hostile work environment claim for failing to plead sufficient facts to

conclude that the discrimination was "extreme."  <u>Id</u>. at 476.  In differentiating between the

requirements for pleading a hostile work environment and proving such a claim, the court wrote that "the issue presently before us, however, is not what the plaintiff is required ultimately to *prove* in order to prevail on her claim, but rather what she is required to *plead* in order to be permitted to develop her case for eventual adjudication on the merits." Id. at 472 (emphasis in original). The Court continued, writing that "the district court's resolution implicitly measured the complaint against a stricter standard of pleading than is required." Id. at 473. The court finds the Gorski logic compelling, and will not, at this stage, attempt to determine whether the facts as pled are sufficient to prove a hostile work environment claim.

Defendant also argues that Plaintiff failed to exhaust his administrative remedies with regard to the hostile work environment claim. Title VII prohibits a court from assuming jurisdiction over claims not brought in the initial EEOC complaint, unless the new claims "are reasonably within the scope of the complainant's original charges and if a reasonable investigation by the EEOC would have encompassed the new claims." Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1212 (3d Cir. 1984). Plaintiff's EEOC complaint included an allegation that "[t]hroughout my employment with NHS, I have observed discriminatory conduct toward myself and other African born and Muslim employees and potential employees." Def. Mot. To Dismiss, Exhibit A. Plaintiff also describes several alleged instances where similarly situated employees were treated in a discriminatory fashion. These allegations are sufficient to meet the burden enunciated in Howze, as a reasonable investigation by the EEOC based on those facts could have encompassed a charge of hostile work environment.

Therefore, Plaintiff's claim regarding being disciplined for inappropriately touching a female employee will be dismissed as a separate cause of action, but proof of the allegation may be considered on the issue of a hostile work environment.

**B.    Plaintiff's retaliation claims**

Defendant similarly argues that Plaintiff's retaliation claims should be dismissed because Plaintiff failed to exhaust his administrative remedies.  Essentially Defendant argues that Plaintiff's failure to check the box marked "retaliation" on the EEOC form is grounds for dismissing the claim.  In support of this proposition, Defendant's cite <u>Nerosa v. Storecast Merch. Corp.</u>, 2002 U.S. Dist. LEXIS 16210 (E.D. Pa. 2002), where the Court dismissed a retaliation claim because of the failure to check the retaliation box, the failure to mention the word retaliation in the EEOC complaint, and the failure to allege that the plaintiff "protested against discrimination of any kind or ... participated in any way in an investigation or proceeding involving discrimination at or prior to the time of her termination ..."  <u>Id</u>. at 18-19.  Defendant claims that Plaintiff "failed to set forth information which would constitute notice of a 'retaliation' claim." Pl.'s Mot. to Dismiss at 15.  Defendant then recites 2 paragraphs from Plaintiff's administrative charge which Defendant claims are the "only" allegations that Plaintiff made to the EEOC.  In making this claim, Defendant ignores the third paragraph of Plaintiff's charge to the EEOC, which states, "I reported national origin and religious discrimination and failure to accommodate religion to NHS's compliance hotline."  Def. Mot. To Dismiss, Exhibit A.  Plaintiff has therefore alleged that he "protested against discrimination," which is sufficient to meet the burden enunciated in <u>Howze</u>, as a reasonable investigation by the EEOC could have encompassed a charge of retaliation.  Therefore, Defendant's Motion to Dismiss the retaliation claim will be denied.

**C.    Section 1981 Claims**

Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be

subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Although the word "race" is not included in the statute, the Supreme Court has construed Section 1981 as "forbid[ing] all 'racial' discrimination in the making of private as well as public contracts. St. Francis Coll. v. Al-Khazraji, 481 U.S. 604, 613 (1987) (quoting Runyon v. McCrary, 427 U.S. 160, 168, 174-175 (1976))

In Al-Khazraji, the Court held that discrimination based on "ancestry or ethnic characteristics" was prohibited by Section 1981, as such discrimination was construed as discrimination based on race. Id. at 613. Justice Brennan, in a concurring opinion, read the Court's holding to mean "only that discrimination based on *birthplace alone* is insufficient to state a claim under § 1981. Id. at 614 (Brennan, J. concurring)(emphasis added). Although the Third Circuit has never directly decided whether national origin alone is an insufficient basis for recovery under Section 1981, it suggested as much in dicta, writing "a claim based solely on national origin would be an insufficient basis for §1981 claim under *Al-Khazraji*." Bennun v. Rutgers State University, 941 F.2d 154, 172 (3rd Cir. 1991)  The majority of district court decisions in this Circuit also support the contention that national origin alone is an insufficient basis for a Section 1981 claim. See Beaubrun v. Inter Cultural Family, 2006 U.S. Dist. LEXIS 47973 (E.D. Pa. 2006) (holding that " section 1981 does not apply to claims of employment discrimination based on national origin alone"); Fekade v. Lincoln Univ., 167 F. Supp. 2d 731, 739 (E.D. Pa. 2001) (agreeing with plaintiff's concession that section 1981 "was not drafted in terms of national origin, and thus [plaintiff's] claim of national origin discrimination cannot be founded on a violation of this statute"); Schouten v. CSX Transp., Inc., 58 F. Supp. 2d 614, 617-18 (E.D. Pa. 1998) ("Section 1981 . . . does not bar discrimination purely on the basis of national origin") (citations omitted); King v. Township of East Lampeter, 17 F. Supp. 2d 394, 417 (E.D. Pa. 1998) ("The scope of [section] 1981 is not so broad as to include disparity in

treatment on the basis of religion, sex, or national origin") (citation omitted); <u>Zezulewicz v. Port Auth. of Allegheny County</u>, 290 F. Supp. 2d 583, 598 (W.D. Pa. 2003) (noting that section 1981's "scope is limited to instances of racial discrimination").

The line between national origin and "ancestry or ethnic characteristics" is "not a bright one." <u>Al-Khazraji</u>, 481 U.S. at 614 (Brennan, J. concurring)  In his response to Defendant's motion to dismiss, Plaintiff claims that he has alleged "precisely the sort of ethnic, cultural discrimination intended to be prohibited by § 1981.  He is identifiably ethnically African, speaks with an accent and practices a religion common to his ethnic origins."  Pl.'s Resp. at 15-16.

Liberally construing Plaintiff's complaint, there is no basis to conclude that he is claiming discrimination on the basis of anything other than national origin and religion.  The introduction to the complaint states that the action is brought "as a result of discrimination in employment practices *on the basis of National Origin* (African), and religion (Islam)..."  Complaint at page 1 (emphasis added).  Plaintiff's initial complaint to NHS's compliance hotline alleged that he was discriminated against based on his national origin and religion.  Complaint at ¶ 36.  Plaintiff makes a total of 6 references in the introduction and Statement of Claims sections of his complaint to discrimination based on national origin.  Complaint at introduction, ¶¶ 6, 36, 51, 52, 57.  At no time does Plaintiff allege discrimination based on race generally, or ancestry or ethnicity specifically.  Plaintiff's EEOC complaint, which was attached as "Exhibit A" to Defendant's Motion to Dismiss, only mentions national origin and religion as the basis for his complaint.  Def. Mot. To Dismiss, Exhibit A.  In fact, although a box is provided in the "Circumstances of Alleged Discrimination" section of the EEOC form, Plaintiff only checked the boxes for national origin and religious discrimination. Id.  Although Plaintiff raised 5 separate counts of discrimination in his complaint, none of them mention anything other than discrimination based on national origin.  Specifically, in Count Three, which alleged a violation of Section 1981, Plaintiff states "[b]y intentionally, wilfully and deliberately discriminating against

10

Plaintiff *because of his national origin*, Defendant ... violated [Section 1981]."  Complaint at ¶ 78 (emphasis added).

The only basis that the court could possibly use to conclude that Plaintiff has pled an allegation of discrimination based on race is the fact that Plaintiff was ".... born in Africa and has a discernable accent." Complaint at ¶ 8.  A reasonable reading of this allegation is that Plaintiff's accent is the basis for determining where he was born.  In any event, reading that paragraph in conjunction with the other portions of the complaint illustrated above, the court concludes that, consistent with <u>Al-Khazraji</u>, Plaintiff has not alleged discrimination on the basis of ancestry, or ethnicity, and therefore, has not alleged racial discrimination.  Therefore, Count Three of Plaintiff's Complaint will be dismissed.

**D.    Plaintiff's claims relating to "similarly situated individuals"**

Defendant argues that Plaintiff's claims that he represents a class of similarly situated individuals who were also discriminated against should be dismissed.  In order to proceed as a class action, Local Rule of Civil Procedure 23.1 requires  that the complaint bear next to its caption the legend, "Complaint - Class Action."  The complaint must also include "appropriate allegations thought to justify such a claim, including the size (or approximate size) of the alleged class."  Local R. Civ. Pro. 23.1 (b)(2)(A).  Plaintiff's Complaint does not include the required legend, nor does it contain any allegation that would satisfy the numerosity requirement of Federal Rule of Civil Procedure 23 (a)(1).  Therefore, Plaintiff's claims on behalf of "similarly situated individuals" are dismissed without prejudice to Plaintiff later alleging a class action pursuant to the requirements of the Federal and Local Rules of Civil Procedure.

**III.    CONCLUSION**

Construing Plaintiff's Complaint to include a hostile work environment claim, the court concludes that Plaintiff's claims regarding being disciplined for inappropriately touching a

female employee may fall within the continuing violations doctrine, but may not be considered as a separate cause of action.  Additionally, Plaintiff's EEOC complaint contained sufficient allegations to encompass a hostile work environment claim.  Plaintiff also raised sufficient facts in his EEOC complaint to encompass a claim for retaliation.  Plaintiff's complaint raises claims of discrimination based on national origin, not based on race, and therefore are not covered by Section 1981.  Finally, Plaintiff's claims that he brings this action on behalf of himself and "all others similarly situated" is dismissed without prejudice.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| OSMAN BAHAR, | **:** | |
| | **:** | |
| Plaintiff, | **:** | |
| v. | **:** | No. 06-CV-3910**:** |
| NORTHWESTERN HUMAN SERVICES, | **:** | |
| | **:** | |
| Defendants. | **:** | |

<u>**ORDER**</u>

_____**AND NOW** this 29th day of January, 2007, **IT IS HEREBY ORDERED** that Defendant's

Motion to Dismiss (Dkt. # 3) is **GRANTED** in part, and **DENIED** in part.  **IT IS FURTHER**

**ORDERED** that:

1)      Count Three of Plaintiff's Complaint is **DISMISSED**;

2)      Plaintiff's claims that he represents "other similarly situated individuals" is

        **DISMISSED** without prejudice;

3)      Defendant's Motion is **DENIED** in all other respects.

                                        **BY THE COURT**:


                                        <u>s/Clifford Scott Green</u>

                                        CLIFFORD SCOTT GREEN, S.J.